UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

FRANCISCO ALBERTO PENA,

                    Defendant/Petitioner.

**ORDER**

00 Cr. 711 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Petitioner Francisco Alberto Pena, a/k/a "Zacarias Gonzalez," a/k/a "Melvin Santiago," has moved for a writ of <u>coram nobis</u>, pursuant to the All Writs Act, 28 U.S.C. §1651(a), to remedy the collateral consequences of his October 19, 2000 conviction for possessing a false identification document with the intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4).  (Def. Mot. (Dkt. No. 16); Judgment (Dkt. No. 13))

For the reasons stated below, Pena's motion will be denied.

## BACKGROUND

### I.    FACTS AND PRIOR PROCEEDINGS

On January 19, 2000, Pena was charged with "unlawfully, willfully, and knowingly [making] false statements in an application for a passport with [the] intent to induce and secure the issuance of a passport," in violation of 18 U.S.C. § 1542.  (Cmplt. (Dkt. No. 1) at 1) According to the Complaint, Pena filed an application for a United States passport at a U.S. Post Office in the Bronx using the name "Melvin Santiago" and a false birth certificate from Puerto Rico.  (<u>Id.</u> ¶ 2)

[T]he Fraud Manager [at the Post Office] suspected that the Application was fraudulent based, in part, on the following fraud indicators:

> a. the Applicant's New York State driver's license was recently issued, purportedly on September 14, 1999;

> b. the evidence of citizenship, to wit, a birth certificate issued by the Commonwealth of Puerto Rico, was recently issued, purportedly on May 27, 1998; and

> c. the Applicant's signature on the Application [was] printed rather than in script.

In addition, . . . although the Applicant claimed to have been born in Ponce, Puerto Rico, and attended public school there[,] . . . [he] could not name any towns surrounding Ponce and seemed wholly unfamiliar with the geography of the area. . . . [Furthermore,] the public school purportedly attended by the Applicant in Ponce, Puerto Rico, did not appear in a directory of Puerto Rican public schools that the Fraud Manager consulted.

(Id. ¶¶ 4-5)

Pena was then questioned by agents of the United States Department of State Diplomatic Security Service.  (Id. ¶¶ 6-7)  After the agents gave Miranda warnings to Pena, he agreed to speak with them.  (Id. ¶ 7)  He told the agents that

his true name is FRANCISCO ALBERTO PEÑA, that he was born in Santo Domingo, Dominican Republic, that his date of birth is October 18, 1975, and that he does not have a valid social security number.  [He] also stated that he had previously paid another individual $500 for a birth certificate in the name of "Melvin Santiago."

(Id.)

On March 6, 2000, Pena was arrested and presented before Magistrate Judge Ronald L. Ellis.  Judge Ellis appointed Assistant Federal Public Defender Mark Gombiner to represent Pena.  (See March 6, 2000 Minute Entries; March 6, 2000 Order (Dkt. No. 4))  After a March 8, 2000 detention hearing, Judge Ellis released Pena on a $10,000 personal recognizance bond, co-signed by one financially responsible person.  (March 8, 2000 Minute Entry)

2

On July 19, 2000, Pena pled guilty to a misdemeanor information charging him with possessing a false identification document with the intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4).  (Information (Dkt. No. 11); July 19, 2000 Minute Entries)  On October 19, 2000, Judge Ellis sentenced Pena to two years' probation, a $25 special assessment, and a $250 fine.  (Judgment (Dkt. No. 13))  Pena did not appeal his conviction, nor did he pursue any form of post-conviction relief.

According to Pena, after his conviction he left the United States.  On March 8, 2001, however, Pena returned to this country.  Pena entered through JFK International Airport on a temporary visa that was valid for 180 days.  (Def. Aff. (Dkt. No. 25) ¶ 4)

On March 21, 2009, Pena applied for a Waiver of Ground of Inadmissibility (Form I-601) to permit permanent residence.  His application was denied.  (Def. Aff. (Dkt. No. 25) ¶ 3)  On April 20, 2009, a removal proceeding was brought against him, based on his 2000 conviction and the fact that he had overstayed his 2001 visa.  (Id. ¶ 4)

## II.     PROCEDURAL HISTORY

On May 14, 2021, Pena filed a motion for coram nobis relief using the name Zacarias Gonzalez.  (Def. Mot. (Dkt. No. 16))  He presents two grounds for relief.  Pena first asserts that "Manual Fittipaldi, who falsely held himself out to be an attorney, advised [him] to use a forged Puerto Rican birth certificate to apply for the passport," and to "use the false name of Francisco Alberto Pena when admitting guilt to the authorities and pleading guilty in court." (Id. at 3)  Pena "thought Fittipaldi was a licensed attorney because he had a law office, and [because] he told [Pena] that he was a licensed attorney."  (Id.)  Fittipaldi was ordered to cease his law office operations in 2010, however, and to advise all his former clients that he was not an attorney and was not authorized to provide legal services.  (Id.)

Pena's second ground for relief is that Mark Gombiner – his lawyer in the criminal case – "assured him he would not be deported [as a result of] his guilty plea." (Id. at 15)

On December 1, 2021, the Government filed an opposition to Pena's motion for coram nobis relief. (See Govt. Opp. (Dkt. No. 24)) The Government argues that,

> [w]ith respect to [Pena's] first claim, the defendant has no cognizable Sixth Amendment ineffective assistance of counsel claim based on advice received from a non-attorney who did not represent him in the criminal proceedings. The second claim similarly fails for multiple reasons: (1) the defendant has not established that his attorney offered incorrect legal advice; (2) he cannot demonstrate that he suffered any prejudice as a result of his counsel's alleged ineffectiveness because the government's evidence of guilt[] was overwhelming and because he received a substantial benefit by pleading guilty to a lesser offense; and (3) the defendant's motion is untimely because he filed the motion twelve years after he learned about the immigration consequences of his plea without any explanation for the inordinate delay.

(Id. at 5)

On July 3, 2023 – more than a year-and-a-half after the Government filed its opposition – the Petitioner filed an affidavit in support of his motion. In his affidavit, Pena admits that he "applied for a United States passport on January 19, 2000 in the Bronx under the name of Melvin Santiago." (Def. Aff. (Dkt. No. 25) ¶ 2) He further acknowledges that "[o]n or about March 21, 2009, [he] was denied [] Application for Waiver of Ground of Inadmissibility (Form I-601) to permit [him] permanent residence because of [his] conviction." (Id. ¶ 3) Pena also states that after his conviction he left the United States, but returned to this country on "March 8, 2001 on a temporary visa that was valid for no longer than 180 days." (Id. ¶ 4) "On April 20, 2009, [Pena] was charged with removal for [his] conviction and for overstaying [his] visa." (Id. ¶ 4)

Pena describes his interactions with Manual Fittipaldi as follows:

> Manuel Fittipaldi, who falsely held himself out to be an attorney, advised me to use a forged Puerto Rican birth certificate to apply for the passport. I thought

4

Fittipaldi was a licensed attorney because he had a law office, and he told me that he was a licensed attorney.  Fittipaldi told me to get a passport using a false birth certificate.  Fittipaldi also advised me to use the false name of Francisco Alberto Pena when admitting guilt to the authorities and pleading guilty in court.  In 2010, Fittipaldi was ordered to cease his law operations and advise all his former "clients" that he was not an attorney and was not authorized to provide legal services, however, I was represented in the District Court by a different person who presumably was an attorney.

(Id. ¶ 5)

Pena goes on to argue that he is entitled to coram nobis relief because he "ha[s] been harmed by Fittipaldi's advice and by the ineffective assistance of counsel by my attorney in the District Court."  (Id. ¶ 6)

## DISCUSSION

I.    **LEGAL STANDARDS**

A.    **Writ of *Coram Nobis***

Coram nobis is a "common law writ used to correct errors 'of the most fundamental character' after a final conviction and exhaustion of all appeals . . . ."  Johnson v. United States, No. 24-1221, 2025 WL 1966390, at *6 (2d Cir. July 17, 2025) (slip op.) (quoting United States v. Morgan, 346 U.S. 502, 511-12 (1954).  "Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of habeas corpus."  Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam).  "Like habeas relief, coram nobis relief lies in tension with the public's interest in finality of judgment."  Moskowitz v. United States, 64 F. Supp. 3d 574, 577 (S.D.N.Y. 2014).  Therefore, "coram nobis is not a substitute for appeal, and . . . is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid."  United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000) (internal citation and quotation omitted).

5

"[T]he bar for succeeding on [] a writ [of coram nobis] is a high one, first, because great respect is placed upon the finality of judgments, and second, because 'a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner.'" United States v. Hernandez, 283 F. Supp. 3d 144, 149 (S.D.N.Y. 2018) (internal citations omitted) (quoting Fleming, 146 F.3d at 90). Furthermore, because "a coram nobis petitioner is not in custody[,] . . . [t]he harm to the petitioner is . . . much less and, accordingly, courts are more reluctant to grant relief [than in the context of a habeas petition]." Moskowitz, 64 F. Supp. 3d at 577; see also Morgan, 346 U.S. at 511 (describing the writ of coram nobis as an "extraordinary remedy" to be issued "only under circumstances compelling such action to achieve justice").

In this Circuit, a coram nobis petitioner "must demonstrate that '1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" Fleming, 146 F.3d at 90 (quoting Foont v. United States, 93 F.3d 76, 78 (2d. Cir. 1996)). "[I]neffective assistance of counsel is one ground for granting a writ of coram nobis." Kovacs v. United States, 744 F.3d 44, 49 (2d. Cir. 2014).

**B.**     **Ineffective Assistance of Counsel**

"A claim of ineffective assistance [of counsel] entails a showing that: 1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense." Id. at 49. A petitioner bears the burden of establishing both prongs of the test. United States v. Birkin, 366 F.3d 95, 100 (2d Cir. 2004).

6

In evaluating the first prong – deficient performance – judicial scrutiny is "highly deferential," <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984), and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" as "[t]here are countless ways to provide effective assistance in any given case." <u>Id.</u> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." <u>Id.</u> at 690. Moreover, "[t]he record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" <u>Wilson v. Mazzuca</u>, 570 F.3d 490, 502 (2d Cir. 2009) (quoting <u>Strickland</u>, 466 U.S. at 687).

As to the second prong – prejudice – a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability means a '"substantial," not just "conceivable," likelihood of a different result.'" <u>Shinn v. Kayer</u>, 592 U.S. 111, 118 (2020) (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011)).

## II.    <u>ANALYSIS</u>

Pena contends that he is entitled to <u>coram nobis</u> relief because of (1) "Fittipaldi's 'legal services' advising [him] to use aliases"; and (2) the "ineffective assistance of counsel" provided by his attorney in his criminal case, who gave him "wrong advice on the immigration implications of [his] guilty plea." (Def. Mot. (Dkt. No. 16) at 3)

### A.    <u>Ineffective Assistance Provided by a Non-Attorney</u>

In seeking <u>coram nobis</u> relief, Pena complains that Fittipaldi – a non-attorney – "misinformed [him] about the consequences" of using aliases (Def. Mot. (Dkt. No. 16) at 3), and "advised [him] to use a forged Puerto Rican birth certificate to apply for the passport. . . [and to]

use the false name of Francisco Alberto Pena when admitting guilt to the authorities and pleading guilty in court." (Def. Aff. (Dkt. No. 25) ¶ 5).

In response, the Government argues that "any [] advice [from Fittipaldi] would not give rise to a <u>coram</u> <u>nobis</u> claim because the purported 'advice' came from an individual who indisputably did not represent the defendant in his criminal case." (Govt. Opp. (Dkt. No. 24) at 10-11)

"A defendant accused of [a] crime has a Sixth Amendment right to effective assistance from his criminal defense attorney at all critical stages in the proceedings, including the entry of a plea of guilty." <u>Chhabra v. United States</u>, 720 F.3d 395, 406 (2d Cir. 2013). Because Fittipaldi never served as Pena's criminal defense attorney, however, no ineffective assistance of counsel claim can be premised on Fittipaldi's alleged advice.[1] <u>Cf.</u> <u>Stevens v. Lee</u>, No. 10 CIV. 3471 RJH THK, 2011 WL 8203860, at *10 (S.D.N.Y. Dec. 19, 2011) ("[T]here is simply no authority for the proposition that a conviction can be vacated because a defendant, who is represented by an attorney in a criminal proceeding, chooses to consult with another counsel who gives him poor advice."), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted,</u> No. 10 CIV. 3471 JMF, 2012 WL 2899092 (S.D.N.Y. July 16, 2012); <u>Moore v. West</u>, No. 903-CV-0053 FJS/DEP, 2007 WL 1302426, at *8 (N.D.N.Y. May 1, 2007) ("[T]he constitution does not guaranty effective representation of a defendant by an attorney who does not represent him or her."); <u>see</u> <u>also</u> <u>United States v. Martini</u>, 31 F.3d 781, 782 (9th Cir. 1994) ("For a lawyer's advice to constitute ineffective assistance of counsel, it must come from a lawyer who is representing the criminal defendant or otherwise appearing on the defendant's behalf in the case.").

---

[1] As discussed above, Pena acknowledges that he "was represented in the District Court by a different person who presumably was an attorney." (Def. Aff. (Dkt. No. 25) ¶ 5)

In sum, to the extent that Pena relied on the advice of a non-lawyer in filing his fraudulent passport application and pleading guilty under a false name, these circumstances provide no basis for this Court to grant coram nobis relief.

**B.     Ineffective Assistance Provided by Criminal Defense Attorney**

Pena also argues that he received ineffective assistance of counsel from the lawyer who represented him in his criminal proceeding. According to Pena, Attorney Gombiner advised Pena that "there would be no immigration consequences resulting from his [misdemeanor] conviction. . . ." (Def. Mot. (Dkt. No. 16) at 14)

**1.     Applicable Law**

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). With respect to the first Strickland prong – deficient performance – "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea" is "objectively unreasonable." United States v. Couto, 311 F.3d 179, 188 (2d Cir. 2002), abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356 (2010) (emphasis omitted).[2]

---

[2] In Padilla, the Supreme Court held that the Sixth Amendment requires counsel to "inform her client whether his plea carries a risk of deportation." 559 U.S. at 374. Because Padilla "announced a new rule," however, "defendants whose convictions became final prior to Padilla . . . cannot benefit from its holding." Chaidez v. United States, 568 U.S. 342, 358 (2013).

Here, Pena's conviction became final in 2000 – ten years before Padilla was decided. Accordingly, Pena's ineffective assistance of counsel argument cannot be premised on his lawyer's alleged failure to advise him of the immigration consequences of his plea. Instead, any ineffective assistance claim requires proof that Pena's lawyer made "an affirmative misrepresentation" regarding the immigration consequences of his misdemeanor plea. Couto, 311 F.3d at 188; Kovacs, 744 F.3d at 50-51 (holding that Couto applies retroactively); Shen v. United States, No. 1:22-CV-8014-GHW, 2024 WL 1803916, at *11 (S.D.N.Y. Apr. 25, 2024) (coram nobis petition; applying Couto to determine the standard for objective unreasonableness where defendant had "pleaded guilty before Padilla").

With respect to the second <u>Strickland</u> prong,

> a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense.

<u>Kovacs</u>, 744 F.3d at 52 (footnote omitted).  In seeking to make such a showing, a <u>coram</u> <u>nobis</u> petitioner "must clearly demonstrate 'that he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty.'"  <u>Id.</u> (alterations adopted) (quoting <u>United States v. Kwan</u>, 407 F.3d 1005, 1017 (9th Cir. 2005)).

In assessing whether a petitioner has made such a showing, "[c]ourts cannot rely solely on 'post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies'; [the court] must also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.'"  <u>Doe v. United States</u>, 915 F.3d 905, 912 (2d Cir. 2019) (quoting <u>Lee v. United States</u>, 582 U.S. 357, 369 (2017)).  Although this inquiry "focuses on a defendant's decisionmaking," "[a] defendant without any viable defense will be highly likely to lose at trial," and "a defendant facing such long odds will rarely be able to show prejudice from a guilty plea that offers him a better resolution than would be likely after trial."  <u>Lee</u>, 582 U.S. at 367.

## 2. Whether Defense Counsel's Performance Was Objectively Unreasonable

In his brief, Pena complains that his attorney incorrectly told him "that there would be no immigration consequences resulting from his conviction. . . ."  (Def. Mot. (Dkt. No. 16) at 14)  An assertion in a brief is not evidence, however, and nothing in the record supports Pena's conclusory statement.

Although Pena submitted an affidavit in support of his <u>coram</u> <u>nobis</u> petition, he does not identify in his affidavit any "affirmative misrepresentation" that his defense attorney allegedly made regarding the immigration consequences of his misdemeanor plea. <u>Couto</u>, 311 F.3d at 188. Instead, Pena baldly asserts that he was "harmed . . . by the ineffective assistance of counsel by my attorney in the District Court" (Def. Aff. (Dkt. No. 25) ¶ 6), without explaining what that ineffective assistance was.

Because Pena has not offered evidence that his attorney made an affirmative misrepresentation regarding the immigration consequences of his guilty plea, he has not demonstrated that his lawyer's advice was objectively unreasonable. <u>See</u> <u>Dorfmann v. United States</u>, No. 13 CIV. 4999 JCF, 2014 WL 260583, at *4 (S.D.N.Y. Jan. 23, 2014) (<u>coram</u> <u>nobis</u> petitioner claimed that lawyer "mistakenly told him that his guilty plea would not lead to his being deported"; finding that <u>Strickland</u> deficient performance prong was not met because petitioner "has proffered no evidence of what [the defense attorney] actually told him. He has submitted no affidavit in which he recounts any erroneous legal advice. Since the petitioner's legal argument hinges on an alleged affirmative misrepresentation, this is a glaring omission."), <u>aff'd</u>, 597 F. App'x 6, 8 (2d Cir. 2015) (summary order) ("Absent so much as a sworn statement claiming that [petitioner's] counsel mischaracterized the effects of a misdemeanor plea, [petitioner] has not established that he received ineffective assistance of counsel."); <u>see</u> <u>also</u> <u>Hernandez v. United States</u>, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003) ("Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel."). Accordingly, Pena has not satisfied the first prong of the <u>Strickland</u> test.

### 3.     <u>Whether Petitioner Has Shown Prejudice</u>

As discussed above, Pena was initially charged in a criminal complaint with "unlawfully, willfully, and knowingly [making] false statements in an application for a passport with [the] intent to induce and secure the issuance of a passport," in violation of 18 U.S.C. § 1542.  That charge is a felony carrying a maximum sentence of ten years' imprisonment. (Cmplt. (Dkt. No. 1) at 1); 18 U.S.C. § 1542.

However, Pena was later permitted to plead guilty to a misdemeanor information that charged him with possessing a false identification document, in violation of 18 U.S.C. § 1028(a)(4).  (Information (Dkt. No. 11); July 19, 2000 Minute Entries)  The maximum sentence for that offense is one year imprisonment.  18 U.S.C. § 1028(b)(6).  Judge Ellis later sentenced Pena to two years' probation.  (Judgment (Dkt. No. 13))

Pena asserts in his brief that "[h]ad he known that he would have been eligible for deportation, he would not have taken the plea bargain."  (Def. Mot. (Dkt. No. 16) at 15)  As with Pena's claim of deficient performance, however, this assertion is not supported by an affidavit or declaration.  Pena's affidavit does not address whether he would have accepted the plea bargain if he had been informed of the alleged immigration consequences.  Nor does Pena indicate in his affidavit that he "'placed particular emphasis on immigration consequences in deciding whether or not to plead guilty.'"  <u>Kovacs</u>, 744 F.3d at 52 (alterations accepted) (quoting <u>Kwan</u>, 407 F.3d at 1017).  In sum, Pena's "<u>post hoc</u> assertions" in his briefing regarding the significance of immigration consequences do not constitute admissible evidence.  And he clearly has not submitted "'contemporaneous evidence to substantiate [his alleged] . . . preferences.'"  <u>Doe</u>, 915 F.3d at 912 (quoting <u>Lee</u>, 582 U.S. at 369); <u>see also</u> <u>Dorfman</u>, 2014 WL 260583, at *5 (finding no prejudice where petitioner "has proffered no sworn statement to the effect that, had he known

that his conviction would have subjected him to deportation, he would have rejected the negotiated plea deal and gone to trial").

Moreover, the evidence of Pena's guilt was overwhelming. After receiving Miranda warnings, Pena admitted to agents of the United States Department of State Diplomatic Security Service that he had been born in Santo Domingo, Dominican Republic on October 18, 1975; that his name was Francisco Pena and not "Melvin Santiago"; that he had used a false name to apply for a passport; and that "he had previously paid another individual $500 for a [false Puerto Rican] birth certificate in the name of 'Melvin Santiago.'"  (Cmplt. (Dkt. No. 1) ¶¶ 2, 7; PSR ¶ 10)  And while Pena claimed to have attended a particular public school in Ponce, Puerto Rico, the name of that school did not appear in a directory of Puerto Rican public schools, and Pena was entirely unfamiliar with the towns surrounding Ponce.  (Cmplt. (Dkt. No. 1) ¶ 5; PSR ¶ 8)  In the face of this overwhelming evidence, there is no "reasonable probability" that Pena "would have litigated an available defense."  Kovacs, 744 F.3d at 52; see also Lee, 582 U.S. at 367 ("[A] defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."); Dorfmann, 597 F. App'x at 8 (no prejudice found where the Defendant pled to a misdemeanor "to avoid proceeding to trial on a felony charge that was clearly supported by the available evidence").

Accordingly, even assuming arguendo that Pena's lawyer's advice regarding the immigration consequences of his misdemeanor plea was objectively unreasonable, Pena has not demonstrated that he suffered any prejudice from that advice.  Pena has not shown that, "but for counsel's unprofessional errors, there was a reasonable probability that [he] could have negotiated a plea that did not impact immigration status or that he would have litigated an

available defense." Kovacs, 744 F.3d at 52 (footnote omitted).  And absent a showing that his lawyer provided ineffective assistance, Pena cannot show that coram nobis relief is necessary "to achieve justice." Foont, 93 F.3d at 79.

    **C.**    **Delay in Filing *Coram Nobis* Petition**

        Even where a petitioner has otherwise demonstrated that he is entitled to coram nobis relief, he must show that "'sound reasons exist for [his] failure to seek appropriate earlier relief.'" Foont, 93 F.3d at 79 (quoting Morgan, 346 U.S. at 512).  The time to file a coram nobis petition "starts to run when the petitioner 'knew or should have known . . . of the facts underlying his current claim.'" Dorfman, 2014 WL 260583, at *6 (quoting Foont, 93 F.3d at 80). Where a petitioner has not provided a sound reason for his delay, that fact "is alone sufficient to bar [a] coram nobis petition."  Rodriguez v. United States, No. 98 CR 00764 MHD, 2012 WL 6082477, at *9 (S.D.N.Y. Dec. 4, 2012).

        Here, Pena was convicted of his misdemeanor offense on October 19, 2000. (Judgment (Dkt. No. 13))  A removal proceeding was brought against him on April 20, 2009, premised on his conviction and the fact that he had overstayed his visa by almost eight years. (Def. Aff. (Dkt. No. 25) ¶ 4)  Despite learning – at least by 2009 – that his misdemeanor conviction carried immigration consequences, Pena waited until May 14, 2021, to file his motion for coram nobis relief.  (See Dkt. No. 16)

        Pena has provided no reason for not seeking coram nobis relief earlier.  (Def. Mot. (Dkt. No. 16) at 9-12)  Courts in this Circuit have rejected coram nobis petitions with delays much shorter than Pena's.  See, e.g., Foont, 93 F.3d at 80-81 (2d Cir. 1996) (five years); Nordahl v. United States, 425 F. App'x 35, 36 (2d Cir.2011) (three and a half years); United States v. Sash, 374 F. App'x 198, 199 (2d Cir. 2010) (four years); Mastrogiacomo v. United States, No. 90-cr-565

(KTD), 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (three years).  Accordingly, Pena's

motion for <u>coram nobis</u> relief also fails because he delayed filing his motion for more than a

decade, and has not offered any reason for his delay.

       **D.**    <u>**Continuing Legal Consequences**</u>

       The final requirement for obtaining <u>coram nobis</u> relief is that petitioner

"'continues to suffer legal consequences from his conviction that may be remedied by granting

the writ.'"  <u>Foont</u>, 93 F.3d at 79 (quoting <u>Nicks v. United States</u>, 955 F.2d 161, 167 (2d Cir. 1992)).

Here, Pena argues that because of his 2000 misdemeanor conviction, he is not eligible for

naturalization.  (Def. Mot. (Dkt. No. 16) at 6)

       However, Pena has not shown that his ineligibility for naturalization is a product

of his misdemeanor conviction.  In other words, even if that conviction were vacated, Pena

would still not be eligible for naturalization.

       Under 8 U.S.C. § 1182(a)(6)(C)(ii)(I), "[a]ny alien who . . . has falsely represented

himself . . . to be a citizen of the United States . . . is inadmissible," regardless of whether they

were criminally convicted for similar or related conduct.  Here, Pena admitted to the authorities

that he had sought to obtain a U.S. passport through the use of a false Puerto Rican birth

certificate in the name of "Melvin Santiago."  (Cmplt. (Dkt. No. 1) ¶ 7; PSR ¶ 10)

       Moreover, "[t]o qualify for naturalization, an applicant must have been lawfully

admitted to the [United States] for permanent residence in accordance with all applicable

immigration laws."  <u>United States v. Drame</u>, No. 18 CIV. 11480 (AKH), 2021 WL 1226996, at *3

(S.D.N.Y. Apr. 1, 2021) (citing 8 U.S.C. § 1427(a), 1429)).  Here, Pena concedes that he

overstayed his temporary visa (Def. Mot. (Dkt. No. 16) at 2), which makes him removable and

therefore ineligible for naturalization under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Accordingly, Pena has

15

not demonstrated that he is eligible for naturalization (or any other immigration benefit) absent

the conviction he is seeking to vacate.  See Rodriguez, 2012 WL 6082477, at *11 ("Even if the

conviction were vacated, as [petitioner] requests, his presence in the country would still be illegal

and still form the basis of the proposed order of removal.  It follows, then, that granting the

coram nobis writ would not relieve him of the prospect of removal.  Accordingly, it cannot be

said that the writ would remedy any 'legal consequences from his conviction.'") (quoting Foont,

93 F.3d at 79).

## CONCLUSION

For the reasons stated above, Petitioner's motion for coram nobis relief (Dkt. No.

16) is denied.

Dated:  New York, New York          SO ORDERED.
        July 29, 2025

_____
        Paul G. Gardephe
        United States District Judge